692 So.2d 1255 (1997)
P & M EQUITIES, INC. d/b/a RE/MAX N.O. Properties
v.
LATTER & BLUM, INC.
No. 96-CA-940.
Court of Appeal of Louisiana, Fifth Circuit.
March 25, 1997.
Michael Osborne, Metairie, for Plaintiff/Appellant.
Jonathan M. Lake, New Orleans, for Defendant/Appellee.
Before GAUDIN, BOWES and WICKER, JJ.
WICKER, Judge.
This appeal arises from an action filed on behalf of P & M Equities, Inc., d/b/a RE/ MAX N.O. Properties (RE/MAX), plaintiff/appellee, to vacate, modify and correct an arbitration award pursuant to La.R.S. 9:4210, and 9:4211. The action was filed against Latter & Blum, Inc. (Latter & Blum), defendant/appellant. RE/MAX sought to vacate and nullify an award by the Arbitration Panel, New Orleans Metropolitan Association of REALTORS®, on April 2, 1996 whereby RE/MAX was ordered to pay Latter & Blum *1256 the sum of $5,976. RE/MAX contends the Arbitration Panel lacked jurisdiction. New Orleans Metropolitan Association of REALTORS® intervened. Latter & Blum subsequently filed a motion to enforce the arbitration award. RE/MAX filed exceptions of no right of action and no cause of action to the intervention. The trial judge dismissed the peremptory exceptions. He dismissed RE/ MAX' action and granted judgment in favor of Latter & Blum and against RE/MAX granting the motion to enforce the Arbitration Award of $5976, costs and legal interest. RE/MAX has appealed. We affirm.
On appeal RE/MAX specifies as error the trial judge's failure to vacate the arbitration award. RE/MAX argues the Arbitration Panel lacked jurisdiction. It asserts that the forum of arbitration is only available to a REALTOR® who brings a claim in contract against another REALTOR® and that no contractual relationship existed in this case.
It is undisputed that both RE/MAX and Latter & Blum are members of the New Orleans Metropolitan Association of REALTORS ® At the hearing, the 1996 National Association of REALTORS® Code of Ethics and Arbitration Manual and the application of Mary Ann Casey (Casey) for REALTOR® membership were introduced.
Section 44(a) of the 1996 National Association of REALTORS® Code of Ethics and Arbitration Manual provides in part:
By becoming and remaining a member and by signing or having signed the agreement to abide by the Bylaws of the Board, every member, where consistent with applicable law, binds himself or herself and agrees to submit to arbitration by the Board's facilities all disputes as defined by Article 17 of the Code of Ethics and, as set forth in the provisions of this Manual, all disputes with any other member, as defined, under the following conditions ... [emphasis added.]
The evidence also reveals the following. On March 21, 1995 Casey, a broker for RE/ MAX entered into an exclusive buyer agreement as broker for Dr. James Keating (Dr. Keating) with Ethel Norton (Norton) to be paid a 20% referral fee. On March 14, 1995 the owners of the property located at 1510 Arabella Street in New Orleans, Louisiana entered into a marketing agreement with Latter & Blum for the sale of this property. Latter & Blum was given the exclusive right to sell the property. Latter & Blum was the listing agent for the property and was given permission to file the listing with the Multiple Listing Service (MLS). A copy of the listing in the MLS states the listing agent is Mathilde Nelson (Nelson).
On March 21, 1995 Dr. Keating entered into an agreement to purchase the Arabella property. This agreement was signed by Nelson of Latter & Blum and Casey of RE/ MAX. The property was subsequently sold to Dr. Keating.
On November 3, 1995 Joan C. Beauchamp (Beauchamp) and Robert W. Merrick (Merrick) of Latter & Blum[1] filed a request to arbitrate naming Casey as respondent. Beauchamp asserted before the Arbitration Panel that she was contacted by Mrs. Keating to view the property and that Mrs. Keating told her she had no agent. Although Beauchamp showed the house to the Keatings in the presence of Nelson, the Keatings used Casey to make the offer to purchase.
Casey testified she is President of RE/ MAX and the broker of record. She had a written exclusive listing agreement with Dr. James Keating.
Appellant admits that this dispute is over the disbursement of a commission on the sale of residential real estate. Beauchamp and Merrick of Latter & Blum instituted arbitration proceedings to seek a portion of the commission paid to Casey.
Appellant contends that under Article 17 of the National Association of REALTORS® Code of Ethics and Arbitration Manual the Arbitration Panel lacked jurisdiction. That article provides:
In the event of a contractual dispute between REALTORS® associated with different firms, arising out of their relationship *1257 as REALTORS®, the REALTORS® shall submit the dispute to arbitration in accordance with the regulation of their Board or Boards rather than litigate the matter [emphasis added].
Appellant argues that Beauchamp had no contractual relationship with Casey or RE/ MAX but only with Nelson or Latter & Blum. Beauchamp should have arbitrated the claim against Nelson and Latter & Blum and not against Casey and RE/MAX. Appellant argues there was a contractual relationship between Casey/RE/MAX and Dr. Keating since Casey was Dr. Keating's exclusive buyer's agent. There was a contractual relationship between the seller and Nelson/Latter & Blum. Nelson was the seller's listing agent. Beauchamp was also a seller's agent. However, there was no contractual relationship between Beauchamp and Casey/RE/MAX. Since there was no contractual relationship, then Beauchamp could not arbitrate against Casey and RE/MAX under article 17. We are not persuaded by this argument.
Appellant argues that a section in the Code of Ethics which gives guidance is dispositive of the issue. Appellant then alludes to examples provided and argues these are controlling. We disagree. The section referred to by appellant merely provides guidance and does not change the clear wording of the ethical provision. That section, Appendix I to Part Ten, states in part:
Despite the guidance provided in the above-referenced sections of the Code of Ethics and Arbitration Manual, questions continue to arise as to what constitutes an arbitrable issue, who are the appropriate parties to arbitration requests, etc. To provide guidance to Board Grievance Committees in their review of arbitration request, the professional Standards Committee of the National Association provides the following information [emphasis added].
Beauchamp claimed she was the procuring cause of the sale and should be entitled to a commission for selling the property. Appellant argues Beauchamp should have arbitrated against the listing broker, Nelson, and not the buyer's agent.
The trial judge reasoned as follows:
The dispute in this case is over a commission, and the parties to the dispute are Latter & Blum and P & M Equities ... I think the parties were bound by the arbitration ...
Section 43 of the 1996 National Association of REALTORS® Code of Ethics and Arbitration Manual defines "Arbitrable Issues" as follows:
As used in Article 17 of the Code of Ethics and in Part Ten of this manual, the terms "dispute" and "arbitrable matter" are defined as those contractual issues and questions including entitlement to commissions and compensation in cooperative transactions, that arise out of the business relationships between REALTORS® and their clients and customers, as specified in Part Ten, Section 44, Duty and Privilege to Arbitrate [emphasis added].
Article 31 of the 1996 National Association of REALTORS® Code of Ethics and Arbitration Manual defines "cooperation" as:
The obligation to cooperate, established in Article 3 of the Code of Ethics, relates to a REALTOR®'s obligation to share information on listed property and to make property available to other brokers for showing to prospective purchasers when it is in the best interest of the seller. An offer of cooperation does not necessarily include an offer to compensate a cooperating broker. Compensation in a cooperative transaction results from either a blanket offer of subagency made through MLS or otherwise, or offers to compensate buyer agents, or, alternatively, individual offers made to subagents or to buyer agents, or other arrangements as negotiated between listing and cooperating brokers prior to the time an offer to purchase is produced [emphasis added].
The dispute at issue is a contractual one which falls squarely within article 7. The parties who are disputing the commission are all REALTOR® members whose commission would be earned as the result of Latter & Blum's listing in the MLS. The issue is an arbitrable one since it concerns a cooperative transaction made through the MLS.
*1258 Appellant argues that this court should overturn the panel's decision since the determination unconstitutionally impairs the obligation of contract by taking compensation away from Casey for which she was legally entitled. Appellant asserts the decision of the Arbitration Panel somehow affects the rights of a buyer to obtain an agent. This court lacks the authority to determine the merits of the claim.[2] Since the 1996 National Association of REALTORS® Code of Ethics and Arbitration Manual controls we find no basis for further judicial inquiry.
There is a strong public policy in favor of arbitration and these awards are presumed valid. National Tea Co. v. Richmond, 548 So.2d 930, 932 (La.1989). We follow Hill v. Cloud, 26,391 (La.App. 2nd Cir. 1/25/95) 648 So.2d 1383, 1388 wherein the court held:
A reviewing court cannot review the merits of an arbitrator's decision ... An appellant may not actually seek a review of the merits of the case by couching its argument in terms of the arbitrators having exceeded their authority ... The grounds for challenging an award do not include errors of law or fact. Errors of law or fact are insufficient to invalidate a fair and honest award [citations omitted; emphasis added.]
Accordingly, for the reasons stated, the judgment is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Appellant suggests that Beauchamp filed the request to arbitrate only in her name. The document shows otherwise.
[2] La.R.S. 9:4210 limits judicial inquiry in an arbitration proceeding to four situations:

A. Where the award was procured by corruption, fraud, or undue means.
B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual final and definitive award on the subject matter was not made.